AO 91 (Rev. 11/11)  Criminal Complaint

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI

**F I L E D**

May 26 2026

**ARTHUR JOHNSTON, CLERK**

# UNITED STATES DISTRICT COURT
## for the
### Southern District of Mississippi

| | |
|---|---|
| United States of America ) | |
| v. ) | |
| DENVER KEITH GOLMON ) | Case No. 1:26-mj- 606-RPM |
| ) | |
| ) | |
| ) | |
| ) | |
| _____ ) | |
| *Defendant(s)* | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____April 29, 2026_____ in the county of _____Harrison_____ in the

____Southern____ District of __MS, Southern Division__ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1513(e) | Retaliating Against a Witness, Victim, or an Informant |

This criminal complaint is based on these facts:

See Affidavit attached hereto and incorporated herein.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Tchanavian N. Cola, HSI Special Agent
_____
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 5-26-2026

_____
*Judge's signature*

City and state:          Gulfport, Mississippi          Robert P. Myers, Jr., United States Magistrate Judge
_____
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Tchanavian Cola, being duly sworn, do hereby depose and state that the following is true and correct to the best of my knowledge:

## PURPOSE OF AFFIDAVIT

1.  I am a Special Agent employed by the Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI). I have over 12 years of United States (U.S.) Government experience in the Criminal Justice field. I hold a master's degree in Homeland Security and a bachelor's degree in criminal justice. I am a graduate of the Criminal Investigator Training Program at the Federal Law Enforcement Training Academy in Glynco, Georgia.

2.  Because this affidavit is being submitted to establish probable cause to support issuing a criminal complaint, I have not included every fact known to me concerning this investigation. I have submitted only those facts and circumstances that I believe are necessary to establish probable cause to support the issuance of a criminal complaint.

3.  The information contained in this affidavit is known to me, personally through my examination of various reports, evidence, records and/or is based on information that has been relayed to me by other law enforcement officers or individuals, as indicated below. I state the following:

## CASE BACKGROUND

4.  In February 2025, Homeland Security Investigations (HSI) Gulfport Border Enforcement Security Task Force (BEST) received information from a confidential source

(CS1) regarding the illegal operation of a cockfighting ring in the Southern District of Mississippi.

5. Denver GOLMON was identified as a law enforcement officer actively participating in cockfighting events in the Southern District of Mississippi. GOLMON came to law enforcement's attention after he confronted an HSI confidential source during a cockfighting derby in Bay Saint Louis, MS. Following the execution of two search warrants during Operation Bayou Birds, law enforcement learned that GOLMON was expected to attend the derby but canceled the day before. GOLMON's fighting cocks were reportedly present during the execution of the search warrants.

6. During interviews, multiple sources indicated that video/audio evidence from the search warrant execution, was circulating. HSI obtained and reviewed the video footage, which depicted HSI video evidence being recorded from a laptop computer by an individual using a cell phone. The computer displayed a sticker reading "Property of City of Hammond, LA 7873." The individual recording appeared to be a male with a strong build, wearing a cap. This person matched GOLMON's physical physique.

7. GOLMON's uncle, Bert LESTER, was among the individuals charged during the search warrant execution on May 3, 2025, in the Southern District of Mississippi. After obtaining a search warrant, a review of LESTER's phone revealed text messages, pictures, and videos of conversations between LESTER and GOLMON involving roosters, rooster derbies, and law enforcement record checks. Based on this information, HSI Gulfport obtained a search warrant for GOLMON's iCloud account.

8. A review of GOLMON's iCloud allowed HSI to connect GOLMON to the distribution of video evidence that was part of the discovery provided to the attorney for

GOLMON's uncle, Bert LESTER, in case 1:25cr81-TBM-RPM. On or about July 5, 2025, GOLMON sent a message about LESTER to another individual: "I'm going to see him tomorrow.  He got a flash drive with all video evidence.  He wants me to watch it." On or about July 10, 2025, GOLMON wrote to another individual: "Earlier I was looking up ways to send out these videos of (redacted) anonymously and found that I could forward calls but I didn't see any way to forward text. It said the only way I could send text messages was to download a third-party app like text now or free or whatever it was. Anyways I did that but it still didn't work."

9.   GOLMON sent the Government's discovery videos to multiple individuals. On or about July 6, 2025, during a conversation with a phone number bearing a country code from Mexico, GOLMON stated, in Spanish, "Hey buddy. Did (redacted) tell you he wasn't the rat?"; "Look, this is him with the camera on his shirt at the derby"; "And he still denies that he's not the rat."; "I have a lot of videos." On or about July 10, 2025, GOLMON advised another individual that "I sent him the videos the other day and he didn't send them to anyone because he's scared that (redacted) will get him deported if he finds out that he's the one who sent them."

10. During a conversation on May 11, 2025, GOLMON wrote in Spanish, (translated) "But the situation with the federal police is bad at this time,"; "they arrested my uncle and Loraine,"; "(redacted) is the rat." The individual responds "Yes, that's the son of a bitch." The two continue to have conversations about roosters and GOLMON going to Mexico to "play."

11. GOLMON had a conversation with another individual, stating: "But he got caught up with drugs and he's not legal. So he been singing." The person replied, "Call ice on his

ass." GOLMON texted, "Hes their rat. They are not going to deport him,"; "Always been a snake." They continued conversations about cockfighting derbies.

12. In a voice recording, GOLMON explained that he was going to send the video evidence showing CS1 wearing a camera on his shirt. He described the video evidence and how he knew it to be CS1. GOLMON explained that he wanted the individual to send it to everyone he knew, especially those who did not believe it was CS1. GOLMON made statements such as, "Those are the people I want to see it," and "I want everybody to see that it was this motherfucker," and "I just recorded like bits and pieces." He went on to say "Please whatever you do, don't tell anybody where you got them from," and "I don't want anyone to know it came from me."

13. During a text conversation with the same individual, the individual told GOLMON "They made the rat legal," "They gonna give him green card." GOLMON responded, "wtf are you serious" and the individual stated "Yea u believe that shit," "We deff not getting rid of him now." The two had multiple conversations about who could be divulging information to CS1 about the current derbies.

14. On or about April 29, 2026, GOLMON contacted another Hammond Police Department officer with CS1's photo and information in an effort to have him arrested. GOLMON made statements such as "You wanna pick up a few illegals?"; "It's some trashy thieving mfers that use to work for my uncle. Stole a lot of money from him."; "Everyone calls him (redacted)"; "Don't mention me. He threatened my uncle a few years ago and he knows I'm his nephew"; "Yep. Is that mf legal now?"; "The guy that called me does inspections on houses for the company that he works for"; "Damn. Yea he needs to go"; "Oh he goes by (redacted) not (redacted)"; "Jeez. He must be a rat." The Department of

Homeland Security (DHS), Immigration and Customs Enforcement (ICE), did not direct nor give GOLMON permission to divulge that information or to target CS1. At GOLMON's direction, CS1 was targeted and detained by two Hammond, Louisiana police officers while at his place of employment. One of the arresting officers advised GOLMON of CS1's release and stated: "I guess, scared him real good at least" and GOLMON responded "Hahaha that means a lot."

15. CS1 received phone calls from a Mexico-based telephone number belonging to an unidentified Hispanic male, who then added another Hispanic male referred to as "the boss." The boss questioned CS1 about who was providing information to law enforcement. Due to GOLMON's actions, CS1 has been labeled a "rat" and has had to avoid visiting Hispanic areas in Tangipahoa Parish, including restaurant establishments near Hammond Police Department. CS1 has received phone calls from individuals in the cockfighting community requesting in-person meetings to view the leaked video. CS1 was advised by his handler not to meet with anyone regarding the leaked video as it is common for those involved in criminal activity to use such meetings as a ruse to cause bodily harm.

16. CS1 is extremely concerned that his safety, as well as the safety of his family, could be at risk due to GOLMON's access to law enforcement databases, which did allow him to obtain CS1's real name and personally identifiable information and shared it with individuals in the Tangipahoa Parish community, identifying CS1 as the "rat". Surviving on a day-to-day basis while remaining vigilant about his safety and that of his family has placed a tremendous burden on CS1's life.

17. Based on the facts and circumstances set forth above, your affiant believes that there is probable cause that, from approximately May 11, 2025 to April 29, 2026, Denver

GOLMON knowingly, with the intent to retaliate, took action harmful to a government witness, including interference with the lawful employment or livelihood of the government's witness, for providing truthful information to a law enforcement officer relating to the federal case of Operation Bayou Birds, in violation of 18 United States Code, Section 1513(e), retaliating against an informant, all of which occurred within the Southern District of Mississippi and elsewhere.

Respectfully submitted,

Tchanavian Cola
Special Agent
Homeland Security Investigations

Subscribed and sworn before me on the 26th day of May 2026.

UNITED STATES MAGISTRATE JUDGE